UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

CHARLES STENSON,                                 :

               Petitioner,              :        11 Civ. 5680 (RJS) (AJP)

        -against-                      :        **REPORT AND RECOMMENDATION**

PHILLIP D. HEATH,                                :

              Respondent.              :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**ANDREW J. PECK, United States Magistrate Judge:**

**To the Richard J. Sullivan, United States District Judge:**

          Pro se petitioner Charles Stenson seeks a writ of habeas corpus from his March 26, 2008 conviction in Supreme Court, New York County, for second degree burglary and fourth degree grand larceny and concurrent sentences of 8 years imprisonment.  (Dkt. No. 1: Pet. ¶¶ 1-5.)

          Stenson's habeas petition asserts that:  (1) the trial court violated Stenson's double jeopardy, due process and fair trial rights, as well as the doctrine of collateral estoppel, when it allowed evidence concerning four credit cards recovered from Stenson when he was arrested even though the indictment's credit card counts had been dismissed (Dkt. No. 1: Pet. ¶ 13(1)-(3)); and (2) Stenson's trial attorney was ineffective for failing to object to the credit card evidence on double jeopardy and due process grounds (Pet. ¶ 13(4)).

          For the reasons set forth below, Stenson's habeas corpus petition should be DENIED.

## FACTS

At 3:15 a.m. on December 24, 2006, the superintendent of an apartment building at 41-43 East 7th Street in Manhattan was awakened by noise in the building's rear courtyard. (Dkt. No. 8: Steward Aff. Ex. A: Stenson 1st Dep't Br. at 6-8; Steward Aff. Ex. B: State 1st Dep't Br. at 1-2.) Looking out his window, the superintendent saw that the courtyard door to Standings, a bar on the building's first floor, was open. (Stenson 1st Dep't Br. at 8; State 1st Dep't Br. at 2.) Having locked that door only thirty minutes earlier, the superintendent went to the front of the building and saw someone inside the bar. (Stenson 1st Dep't Br. at 8; State 1st Dep't Br. at 2.) The superintendent trapped the intruder within the courtyard and bar area by locking the courtyard door to the residential part of the building, and asked a friend to call the police. (Stenson 1st Dep't Br. at 8; State 1st Dep't Br. at 2.)

A police officer looked through the bar's locked front door and saw a man with a tan hat walking to the back. (Stenson 1st Dep't Br. at 8; State 1st Dep't Br. at 2.) After the superintendent led officers to the building's rear courtyard, the officers noticed that the bar's courtyard door had been pried open and observed two flat screen televisions on the floor near the door. (Stenson 1st Dep't Br. at 8-9; State 1st Dep't Br. at 2.) The officers did not find anyone inside the bar, but the bar's cash register was open and empty. (Stenson 1st Dep't Br. at 9; State 1st Dep't Br. at 2-3.)

Searching the area for the intruder, the officers noticed ladders underneath a three-foot tear in a blue tarp overhanging the courtyard. (Stenson 1st Dep't Br. at 9; State 1st Dep't Br. at 3.) The officers went to the roof and discovered Stenson lying on a narrow ledge on the building's

second floor connecting 41-43 East 7th Street to an adjacent building.  (Stenson 1st Dep't Br. at 9-10; State 1st Dep't Br. at 3.)   The officers arrested Stenson, who was wearing a tan hat, and recovered $386 and four credit cards from his jacket pocket.  (Stenson 1st Dep't Br. at 10; State 1st Dep't Br. at 3.)  The bar's owner testified that those credit cards had been in the bar's cash register earlier that night.  (Stenson 1st Dep't Br. at 10-11; State 1st Dep't Br. at 3.)

**The Pre-Trial Motion to Dismiss the Indictment**

Stenson was charged in an eleven-count indictment, including four counts of fourth degree grand larceny and four counts of fourth degree criminal possession of stolen property relating to the stolen credit cards.  (Dkt. No. 8: Steward Aff. Ex. G: Stenson 8/10/10 Aff. Ex. A: Stenson Indictment.)  On June 8, 2007, Stenson's counsel filed a motion to dismiss the indictment.  (See Steward Aff. Ex. A: Stenson 1st Dep't Br. at 3.)   On August 2, 2007, Justice Ruth Pickholz dismissed all the counts relating to the stolen credit cards, finding that there was no evidence before the grand jury that Stenson stole the cards or was unauthorized to possess them:

> The application to dismiss the indictment on the ground that the Grand Jury minutes are legally insufficient is denied with the exception that counts three through ten are dismissed.  No witness testified that the credit cards usually kept in the cash register were missing after the burglary.  Consequently it was impossible for the Grand Jury to infer that [Stenson] stole them or that the cards found in his possession were stolen from the bar or any other source.  There was also no testimony that [Stenson] did not have authority to take the cards found in his possession.  The People are given leave to represent these counts to a new Grand Jury.

(Steward Aff. Ex. G: Stenson 8/10/10 Aff. Ex. B: J. Pickholz 8/2/07 Decision at 1, fn. omitted.)

**The Trial**

In December 2007, Stenson proceeded to a jury trial before Justice Richard D. Carruthers.  (Dkt. No. 8: Steward Aff. Ex. U: Trial Transcript ("Tr.").

**The Prosecution Case**

Standards is a bar located on the first floor of a residential apartment building at 41-43 East 7th Street in Manhattan.  (Gillis: Tr. 27-28, 33, 68; Misevych: Tr. 113-14; Menoni: Tr. 254.)  The bar has two entrances: one door in front for customers opening to the street and another door in the back for employees leading to the building's rear courtyard.  (Gillis: Tr. 28-30, 37-39, 41-42, 51, 61-65, 80-81; Misevych: Tr. 115, 118-19, 134-35, 137-38; Cosme: Tr. 165-66, 220, 235-36; Menoni: Tr. 259.)  The residential portion of the building also has access to the courtyard through a back door.  (Gillis: Tr. 29-30, 36-38, 62; Misevych: Tr. 117-18.)

On December 23, 2006, the bar's owner Gary Gillis left the bar at 8:00 p.m.  (Gillis: Tr. 27-28, 75-76, 101.)  At 1:00 a.m., the bar's closing time, the night bartender called the building superintendent Vasyl Misevych to help close the bar.  (Gillis: Tr. 61, 73, 77, 88; Misevych: Tr. 113, 115-17, 119, 146-47.)  After the bartender left and the bar was empty, Misevych locked the front door with a tall metal gate.  (Misevych: Tr. 115-17, 135.)  Misevych locked the bar's rear wooden door with a padlock.  (Gillis: Tr. 63, 81, 86; Misevych: Tr. 119, 137-38.)  Misevych finished locking up the bar around 3:00 a.m. and went back to his apartment in the building to sleep.  (Misevych: Tr. 119-20.)

At around 3:15 a.m., Misevych heard a noise in the building's rear courtyard, looked out his window and saw the bar's back door wide open.  (Misevych: Tr. 120, 123.)  Having locked

that door a half hour before, Misevych got dressed and walked outside to the front of the bar. (Misevych: Tr. 119-20, 123.)  Although the bar's security gate and front door were still locked, Misevych saw a "tall guy" moving inside the bar with "short hair" "wearing something dark." (Misevych: Tr. 120, 123-24, 128, 130, 138.)  With the bar's front door secured, the intruder's only means of escape from the building was through the building's residential section.  (Misevych: Tr. 121.)  Misevych locked the building's rear entrance to the courtyard, trapping the intruder in the confines of the bar and courtyard.  (Misevych: Tr. 120-21, 135-36; Cosme: Tr. 200.)  Misevych waited in front of the bar while a friend called the police.  (Misevych: Tr. 121-22.)

    Police Officers Carlos Cosme and Christian Menoni were a block away when they got a call of a burglary in progress.  (Cosme: Tr. 161-62; Menoni: Tr. 254.)  After arriving at the bar and speaking to Misevych, Officer Cosme looked through the locked security gate and saw someone inside with a tan colored hat walking to the back of the bar.  (Misevych: Tr. 124; Cosme: Tr. 162-63, 167-68, 193-94, 196-97, 226; Menoni: Tr. 254-55, 281, 293, 298.)  Misevych led the officers through the residential portion of the building to the rear courtyard.  (Misevych: Tr. 143; Cosme: Tr. 163-65, 168, 193, 197-200, 226-27; Menoni: Tr. 255-57.)  The officers crossed through the courtyard and saw two televisions lying on the ground near the bar's back door.  (Misevych: Tr. 125-26, 140, 142-43; Cosme: Tr. 191-92, 227-28; Menoni: Tr. 256, 258-59, 269.)  The back door looked "like it had been pried open" with its metal frame bent and wood splintered.  (Cosme: Tr. 166, 190, 201-02, 236, 246-48.)

    The officers entered the bar through the back door, but no one was there.  (Cosme: Tr. 166, 169, 228; Menoni: Tr. 257-58, 293.)  They noticed that two wall mounts for flat screen

televisions were empty; another television was still mounted on the wall, but its wires were disconnected and dangling.  (Gillis: Tr. 43, 48, 50-51, 74, 87, 98-101, 107-08; Misevych: Tr. 124-25; Cosme: Tr. 167, 186-87; Menoni: Tr. 258.)  Misevych noticed that the cash resister was open and empty and that the wood on the bar's front door interior was splintered.  (Gillis: Tr. 43, 45, 63-65, 74, 81-85, 87, 103-05; Misevych: Tr. 124-25; Cosme: Tr. 167, 187, 224.)

        The officers searched the courtyard for the intruder.  (Cosme: Tr. 169, 193, 218-19, 228-29; Menoni: Tr. 257-59.)  After about twenty minutes, the officers noticed a three-foot tear in the blue tarp overhanging the courtyard.  (Gillis: Tr. 31, 47, 53-54, 90; Misevych: Tr. 126, 147; Cosme: Tr. 170, 173, 175-76, 193, 210-14, 229, 231-32; Menoni: Tr. 259-61.)  Underneath the tear were ladders leaning against the courtyard's back wall.  (Misevych: Tr. 127; Cosme: Tr. 176, 179, 210-11; Menoni: Tr. 260-61, 283.)  To get a better view of the courtyard, the officers went back into the building and looked down from its roof.  (Cosme: Tr. 170-71, 231-32; Menoni: Tr. 259, 261-62, 286-87.)  The officers saw a narrow ledge on the building's second floor connecting 41-43 East 7th Street to an adjacent building.  (Misevych: Tr. 130; Cosme: Tr. 171, 173-74, 176, 237-238; Menoni: Tr. 260.)  Using their flashlights, the officers observed Stenson lying face up on the ledge talking on his cell phone.  (Cosme: Tr. 171-76, 180-81, 237; Menoni: Tr. 260, 262, 284, 286-87.)[1]  Officer Menoni accessed the ledge from a second floor apartment and apprehended Stenson.  (Cosme: Tr. 171-72, 181-82; Menoni: Tr. 257, 262-64, 287-88, 302.)  When arrested, Stenson was wearing a tan

---

[1]     The ledge was near the courtyard wall where the ladders were leaning.  (Cosme: Tr. 173-77; Menoni: Tr. 260.)

hat and black jacket and had $386, four credit cards and a cell phone in his jacket pocket.  (Cosme: Tr. 183-85; Menoni: Tr. 264-66, 273, 277-78.)

Gillis arrived after being called by Misevych and saw the damage to the bar and the empty cash register.  (Gillis: Tr. 42-51, 63-65, 73-75, 81-87, 98-101, 103-05, 107.)  Gillis testified that, as part of the bar's "standard operating procedure," the night bartender left around $300 in the cash register at closing.  (Gillis: Tr. 45, 56, 78.)  Four or five customer credit cards that had been in the cash register were no longer there.  (Gillis: Tr. 46, 56-57, 78.)  Some of these credit cards had been in the cash register for months, but Gillis remembered seeing the cards hours before the burglary.  (Gillis: Tr. 46,  60, 79-80, 101.)[2]  Gillis confirmed that the credit cards recovered from Stenson were the same cards that had been in the bar's cash register hours earlier.  (Gillis: Tr. 57, 60-61; Menoni: Tr. 279.)[3]

### Defense Counsel Objects to the Credit Card Evidence

After the jury was selected and before Justice Carruthers' preliminary instructions to the jury, defense counsel raised Stenson's concerns whether the evidence that he was carrying the credit cards would be admissible since the charges in the indictment relating to the credit cards had been dismissed.  (Dkt. No. 8: Steward Aff. Ex. T: Voir Dire Tr. ("VD") 240.)  The prosecutor responded that "[t]here was nothing in [Justice Pickholz's] Decision saying property was unlawfully

---

[2]    Gillis was able to identify the credit cards because he "recognized a few of the last names" and because one of them, a Connex Credit Union card, was "unusual."  (Gillis: Tr. 60, 79.)

[3]    Stenson was not a bar employee and did not have permission or authority to be inside the bar after closing.  (Gillis: Tr. 42, 66.)  Stenson was not a tenant in the 41-43 East 7th Street apartment building.  (Misevych: Tr. 132; Menoni: Tr. 276.)

recovered or could not be used as evidence of the other crimes on the Indictment." (VD 242.) The prosecutor further argued that the credit cards were admissible "to establish the fact that [Stenson] committed . . . the charges that were remaining in the Indictment." (VD 242-43.) Justice Carruthers ruled that the credit cards were admissible, noting, "if evidence is presented that [Stenson] had in his possession credit cards that were last seen in the burglarized, allegedly burglarized, premises, that would be relevant evidence in terms of the identification of the alleged perpetrator." (VD 243.)

Defense counsel again sought to exclude the credit cards, arguing that they were evidence of uncharged crimes because the indictment's credit card counts had been dismissed. (VD 252-55, 257.) Defense counsel argued that "it is [the defense's] position that not only were the [credit card] charges dismissed, all testimony related to the charges is also dismissed and not to be used at trial." (VD 253-54.) The prosecutor argued that the credit cards established that Stenson was the burglar because Gillis would testify that the credit cards recovered from Stenson were the same cards that had been in the bar's cash register. (VD 255-56.) The prosecutor added that "there's nothing, nothing, in Judge Pickholz' Decision that precludes the evidence from being used in the remaining charges." (VD 256.)

Justice Carruthers stated that Justice Pickholz's ruling applied only to the sufficiency of the evidence before the grand jury, but that:

> As far as the Trial is concerned, the People may properly endeavor to prove that [Stenson] had property on his person that was taken from the bar during this alleged incident.
>
> To do that, the People would have to establish a foundation, first, that the property [Stenson] had on his person, in fact, was property that was taken from the bar.

> If the People just presented evidence that some credit cards were stolen from the bar, without any indication what those credit cards were, I would agree with [the defense].  The credit cards on [Stenson's] person would not be admissible.

> But if the People establish a foundation that there were credit cards at the bar, and that these credit cards can be identified, and that they're identified as property that [Stenson] had on his person, well, they would be admissible in terms of the burglary charge and to establish the identity of [Stenson] as the purported perpetrator. It would go toward that.

> It would be for the jury to determine whether [Stenson], of course, is the perpetrator or not.

(VD 257-58.)  Justice Carruthers advised that he would give "the jury the appropriate precautionary instruction that [Stenson] is not charged with the theft of these particular items; but this evidence is admitted solely on the question of whether [Stenson] is or is not the person who allegedly entered the bar without authority."  (VD 258-59.)

At trial, defense counsel objected when the prosecutor attempted to admit the credit cards during Gillis' testimony, arguing again that the indictment's credit card counts were dismissed by Justice Pickholz.  (Steward Aff. Ex. U: Tr. 58-59.)  Justice Carruthers admitted the credit cards subject to connection and instructed the jury:

> I want you to understand that there is no charge against [Stenson] in the indictment of the theft of credit cards.  This evidence is admitted only for a limited purpose and that would be on the issue of whether or not [Stenson] is properly identified as the perpetrator of the alleged burglary and you could give these exhibits, if they are finally entered into evidence, any weight you see fit but only on that particular issue.

(Tr. 59-60.)  After Officer Menoni testified that he recovered the credit cards from Stenson (see pages 6-7 above), Justice Carruthers admitted the cards into evidence over defense counsel's renewed objection (Tr. 279-80).

### The Charge Conference and Jury Charge

At the charge conference, the prosecutor requested a charge on the "recent and exclusive possession of stolen property" for the credit cards.  (Dkt. No. 8: Steward Aff. Ex. U: Tr. 313, 315.)[4/]  Defense counsel objected, arguing that the prosecutor should not be allowed to mention the credit cards during summation because "that would be an uncharged crime," and "[t]he credit cards are out, period."  (Tr. 315.)  Justice Carruthers responded:

> No; they're not out.  There's evidence about them.
>
> But the instruction that I will give the jury -- and I'll repeat it concerning the credit cards -- that the only relevance that they could consider, that the only reason

---

[4/]     This Pattern charge provides, inter alia:

> Under [New York] law, if the People prove beyond a reasonable doubt that the defendant was in exclusive possession of property recently stolen during a [crime], and that there is no innocent explanation for that possession, then you may, but are not required to, infer that the possession was guilty possession.
>
> If you draw that inference, you must then decide whether or not the defendant's guilty possession was the result of his/her participation in the crime during which the property was stolen.

http://www.nycourts.gov/cji/1-General/CJI2d.Possession_Recent+Exclusive.pdf (last visited Jan. 9, 2012) (fn. omitted).  This charge is based on People v. Galbo, which held that:  "It is the law that recent and exclusive possession of the fruits of crime, if unexplained or falsely explained, will justify the inference that the possessor is the criminal.  That rule has most frequently been applied in cases of burglary and larceny and receiving stolen goods . . . ."  People v. Galbo, 218 N.Y. 283, 290 (1916) (Cardozo, J.) (citations omitted).

they were admitted into evidence is on the issue of whether the defendant was, in fact, the person who went into the bar and no other reason.

(Tr. 315-16.)  After additional argument (Tr. 316-21), Justice Carruthers repeated his ruling that the credit cards were admissible under Molineux's identity exception:

> I admitted the credit cards, themselves, into evidence.  And I did that for the same purpose that I've told the jurors.  It's something they're free to consider in determining whether [Stenson] is the person who allegedly burglarized this institution or whether he's not.  They can give it any weight as they see fit.

> So, it's perfectly admissible evidence under Molineux on the question of identity.  I'll repeat the charge on that issue that I gave to the jury already in the main charge.

(Tr. 322.)  Justice Carruthers denied the prosecutor's requested Galbo charge, however, noting that the credit cards were not admissible "on the issue of intent to commit a crime or any other issue."

(Tr. 328-29.)  Justice Carruthers also warned the prosecutor not to refer in summation to the credit cards as stolen property.  (Tr. 330.)

As part of his jury charge, Justice Carruthers instructed:

> Concerning the credit cards that Mr. Stenson allegedly had in his possession at the time of his arrest, as I told you previously, there are no charges in this Indictment relating to those credit cards.

> You may consider the evidence concerning the credit cards for the limited purpose that I previously mentioned.

> That is, whether or not the People have proven beyond a reasonable doubt that Mr. Stenson was the person who allegedly entered the building in question on December 24, 2006.

> Should you find that the evidence concerning the credit cards is credible, then you may give that evidence any weight you choose on the sole issue for which it was admitted.

On the other hand, should you find that the evidence is not credible, then reject it as [not] having any value at all on this issue.

(Tr. 396-97.)[5/]

### Verdict and Sentencing

On December 10, 2007, the jury convicted Stenson of second degree burglary and fourth degree grand larceny.  (Dkt. No. 8: Steward Aff. Ex. U: Tr. 426-29.)

On March 26, 2008, Justice Carruthers sentenced Stenson to concurrent terms of 8 years imprisonment for the burglary and 1-1/3 to 4 years for the grand larceny.  (Dkt. No. 8: Steward Aff. Ex. U: 3/26/08 Sentencing Tr. at 14.)

### Stenson's Direct Appeal

Represented by new counsel, the Center for Appellate Litigation, Stenson's appeal to the First Department argued that Justice Carruthers deprived Stenson of a fair trial "by permitting testimony about [Stenson's] alleged possession of stolen cards that had been the subject of previously-dismissed counts of the indictment, particularly inasmuch as the jury was unaware that the counts had been dismissed."  (Dkt. No. 8: Steward Aff. Ex. A: Stenson 1st Dep't Br. at 13-19.) Stenson relied primarily on two leading New York cases, People v. Molineux, 168 N.Y. 264 (1901), and People v. Resek, 3 N.Y.3d 385, 787 N.Y.S.2d 683 (2004).  (Stenson 1st Dep't Br. at 13-19.) Stenson did not cite to the U.S. Constitution or to any federal cases.  (Id.)

---

[5/]    During deliberations, the jury requested a read back of "'the testimony of bar owner, Gary Gillis, regarding his recollection and identification of credit cards.'"  (Tr. 422-24.)

On December 1, 2009, the First Department affirmed Stenson's conviction, holding in full:

> The court properly admitted testimony that [Stenson] possessed credit cards that had been last seen in the premises where the burglary occurred, even though a motion court had dismissed the counts of the indictment relating to the cards. This evidence clearly linked [Stenson] to the burglary and, contrary to [Stenson's] argument, we find nothing in People v. Resek, 3 N.Y.3d 385, 787 N.Y.S.2d 683 [2004] to suggest that otherwise admissible uncharged crimes evidence is necessarily rendered inadmissible by a dismissal of charges relating to the conduct at issue. Here, the counts relating to the credit cards were dismissed, with leave to re-present, due to technical gaps in the proof before the grand jury. The dismissal cannot be viewed as "clearing" [Stenson] of possessing the credit cards (compare Resek, 3 N.Y.3d at 390) or creating any unfairness about using that possession as proper uncharged crimes evidence. [Stenson's] argument that the trial jury should have been told about the dismissal is unpreserved and we decline to review it in the interest of justice. As an alternative holding, we likewise reject it on the merits.

People v. Stenson, 68 A.D.3d 419, 419, 890 N.Y.S.2d 40, 40 (1st Dep't 2009). On May 11, 2010, the New York Court of Appeals denied leave to appeal. People v. Stenson, 14 N.Y.3d 893, 903 N.Y.S.2d 781 (2010).

**Stenson's Coram Nobis Motion**

On August 10, 2010, Stenson filed a pro se motion for a writ of error coram nobis, claiming his appellate counsel was ineffective for failing to argue on direct appeal that, because Justice Pickholz's dismissal of the indictment's credit card counts was a "final judgment," the prosecutor was barred by double jeopardy and collateral estoppel from admitting the credit cards at trial. (Dkt. No. 8: Steward Aff. Ex. G: Stenson 8/10/10 Coram Nobis Aff. ¶¶ 10-43.)

On December 14, 2010, the First Department denied Stenson's coram nobis petition. (Steward Aff. Ex. I: 12/14/10 1st Dep't Order.) On February 23, 2011, the New York Court of

Appeals denied leave to appeal from the First Department's denial of Stenson's coram nobis motion.

(Steward Aff. Ex. L: 2/23/11 Ct. App. Cert. Denying Leave.)

**Stenson's C.P.L. § 440 Motion**

On March 28, 2011, Stenson filed a pro se C.P.L. § 440 motion arguing that:

(1) Justice Carruthers violated Stenson's double jeopardy, due process and fair trial rights, as well

as the doctrine of collateral estoppel, when he admitted the credit card evidence even though the

indictment's credit card counts had been dismissed (Dkt. No. 8: Steward Aff. Ex. M: Stenson

3/28/11 § 440 Aff. ¶¶ 1, 9-17 & Stenson § 440 Br. at 2-4, 6); and (2) Stenson's trial attorney was

ineffective for objecting to the credit card evidence on other grounds but failing to object on double

jeopardy grounds (Stenson 3/28/11 § 440 Aff. ¶¶ 1, 18 & Stenson § 440 Br. at 4-5, 6).

Justice Carruthers denied Stenson's § 440 motion on July 13, 2011, ruling that

Stenson's credit card claims were raised in Stenson's direct appeal and therefore could not be raised

in a § 440 motion.  (Dkt. No. 8: Steward Aff. Ex. P: J. Carruthers 7/13/11 Decision at 2, citing

C.P.L. § 440.10(2)(a).)  Justice Carruthers also denied Stenson's ineffective assistance claim, noting

that the trial record demonstrated that defense counsel objected to the credit cards being admitted

but the objection was overruled.  (J. Carruthers 7/13/11 Decision at 2.)[6]

---

[6]     Stenson filed a motion to reconsider on July 27, 2011 (Steward Aff. Ex. Q: Stenson 7/27/11
        Motion for Reconsideration), which Justice Carruthers denied without opinion on August 31,
        2011 (Steward Aff. Ex. R: J. Carruthers 8/31/11 Decision).  On July 13, 2011, Stenson
        applied to the First Department for leave to appeal Justice Carruthers' § 440 decision.
        (Steward Aff. Ex. S: Stenson Leave Appl.)  The First Department had not ruled on Stenson's
        application at the time the State responded to Stenson's habeas petition in November 2011.
        (See Dkt. No. 9: State Br. at 12 n.4.)

**Stenson's Federal Habeas Petition**

On July 27, 2011, Stenson filed a pro se federal habeas corpus petition arguing that: (1) Justice Carruthers violated Stenson's double jeopardy, due process and fair trial rights, as well as the doctrine of collateral estoppel, when he admitted the credit card evidence even though the indictment's credit card counts had been dismissed (Dkt. No. 1: Pet. ¶ 13(1)-(3)); and (2) Stenson's trial attorney was ineffective for failing to object to the credit card evidence on double jeopardy and due process grounds (Pet. ¶ 13(4)).

## ANALYSIS

## I.   THE AEDPA REVIEW STANDARD

Before the Court can determine whether petitioner is entitled to federal habeas relief, the Court must address the proper habeas corpus review standard under the Antiterrorism and Effective Death Penalty Act ("AEDPA").

In enacting the AEDPA, Congress significantly "modifie[d] the role of federal habeas courts in reviewing petitions filed by state prisoners."  Williams v. Taylor, 529 U.S. 362, 403, 120 S. Ct. 1495, 1518 (2000).  The AEDPA imposed a more stringent review standard, as follows:

> (d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim --
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2)  . . . was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2).[7]

The "contrary to" and "unreasonable application" clauses of § 2254(d)(1) have "independent meaning." Williams v. Taylor, 529 U.S. at 404-05, 120 S. Ct. at 1519.[8] Both, however, "restrict[] the source of clearly established law to [the Supreme] Court's jurisprudence." Williams v. Taylor, 529 U.S. at 412, 120 S. Ct. at 1523.[9] "That federal law, as defined by the

---

[7]  See also, e.g., Cullen v. Pinholster, 131 S. Ct. 1388, 1398 (2011); Knowles v. Mirzayance, 556 U.S. 111, 129 S. Ct. 1411, 1418 (2009); Portalatin v. Graham, 624 F.3d 69, 78-79 (2d Cir. 2010) (en banc), cert. denied, 131 S. Ct. 1691, 1693 (2011); Henry v. Poole, 409 F.3d 48, 67 (2d Cir. 2005), cert. denied, 547 U.S. 1040, 126 S. Ct. 1622 (2006); Howard v. Walker, 406 F.3d 114, 121-22 (2d Cir. 2005); Cox v. Donnelly, 387 F.3d 193, 197 (2d Cir. 2004); Dallio v. Spitzer, 343 F.3d 553, 559-60 (2d Cir. 2003), cert. denied, 541 U.S. 961, 124 S. Ct. 1713 (2004); Eze v. Senkowski, 321 F.3d 110, 120 (2d Cir. 2003) ("AEDPA changed the landscape of federal habeas corpus review by 'significantly curtail[ing] the power of federal courts to grant the habeas petitions of state prisoners.'" (quoting Lainfiesta v. Artuz, 253 F.3d 151, 155 (2d Cir. 2001), cert. denied, 535 U.S. 1019, 122 S. Ct. 1611 (2002))).

[8]  Accord, e.g., Henry v. Poole, 409 F.3d at 68; Howard v. Walker, 406 F.3d at 122; Parsad v. Greiner, 337 F.3d 175, 181 (2d Cir.), cert. denied, 540 U.S. 1091, 124 S. Ct. 962 (2003); Jones v. Stinson, 229 F.3d 112, 119 (2d Cir. 2000); Lurie v. Wittner, 228 F.3d 113, 125 (2d Cir. 2000), cert. denied, 532 U.S. 943, 121 S. Ct. 1404 (2001); Clark v. Stinson, 214 F.3d 315, 320 (2d Cir. 2000), cert. denied, 531 U.S. 1116, 121 S. Ct. 865 (2001).

[9]  Accord, e.g., Carey v. Musladin, 549 U.S. 70, 77, 127 S. Ct. 649, 654 (2006) ("Given the lack of holdings from this Court regarding [this issue], it cannot be said that the state court 'unreasonabl[y] appli[ed]' clearly established Federal law.'"); Yarborough v. Alvarado, 541 U.S. 652, 661, 124 S. Ct. 2140, 2147 (2004) ("We look for 'the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision.'"); Wiggins v. Smith, 539 U.S. 510, 519, 123 S. Ct. 2527, 2534 (2003); Lockyer v. Andrade, 538 U.S. 63, 71, 123 S. Ct. 1166, 1172 (2003) ("Section 2254(d)(1)'s 'clearly established' phrase 'refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision.'"); Portalatin v. Graham, 624 F.3d at 79 ("To qualify as 'clearly established' for the purposes of federal habeas review, a rule of law must be embodied in the 'holdings, as opposed to the dicta,' of Supreme Court precedent."); Georgison v. Donelli, 588 F.3d 145, 153-54 (2d Cir. 2009); Dunlap v. Burge, 583 F.3d 160, (continued...)

Supreme Court, may be either a generalized standard enunciated in the [Supreme] Court's case law or a bright-line rule designed to effectuate such a standard in a particular context." Kennaugh v. Miller, 289 F.3d at 42; accord, e.g., Davis v. Grant, 532 F.3d 132, 140 (2d Cir. 2008), cert. denied, 555 U.S. 1176, 129 S. Ct. 1312 (2009).   "A petitioner can not win habeas relief solely by demonstrating that the state court unreasonably applied Second Circuit precedent." Yung v. Walker, 341 F.3d at 110; accord, e.g., DelValle v. Armstrong, 306 F.3d at 1200.

> As to the "contrary to" clause:
>
> A state-court decision will certainly be contrary to [Supreme Court] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases. . . .  A state-court decision will also be contrary to [the Supreme] Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent.

Williams v. Taylor, 529 U.S. at 405-06, 120 S. Ct. at 1519-20.[10]

---

[9]    (...continued)
164 (2d Cir.), cert. denied, 130 S. Ct. 642 (2009); Hargett v. Giambruno, 291 F. App'x 402, 403 (2d Cir. 2008); Howard v. Walker, 406 F.3d at 122; Tueros v. Greiner, 343 F.3d 587, 591 (2d Cir. 2003), cert. denied, 541 U.S. 1047, 124 S. Ct. 2171 (2004); Yung v. Walker, 341 F.3d 104, 109-10 (2d Cir. 2003); Parsad v. Greiner, 337 F.3d at 181; DelValle v. Armstrong, 306 F.3d 1197, 1200 (2d Cir. 2002); Kennaugh v. Miller, 289 F.3d 36, 42 (2d Cir.), cert. denied, 537 U.S. 909, 123 S. Ct. 251 (2002); Loliscio v. Goord, 263 F.3d 178, 184 (2d Cir. 2001); Sellan v. Kuhlman, 261 F.3d 303, 309 (2d Cir. 2001).

[10]    Accord, e.g., Knowles v. Mirzayance, 129 S. Ct. at 1419 (The Supreme "Court has held on numerous occasions that it is not 'an unreasonable application of clearly established federal law' for a state court to decline to apply a specific legal rule that has not been squarely established by this [Supreme] Court." (quotation omitted)); Brown v. Payton, 544 U.S. 133, 141, 125 S. Ct. 1432, 1438-39 (2005); Bell v. Cone, 543 U.S. 447, 452-53, 125 S. Ct. 847, 851 (2005); Price v. Vincent, 538 U.S. 634, 640, 123 S. Ct. 1848, 1853 (2003); Lockyer v. Andrade, 538 U.S. at 73-74, 123 S. Ct. at 1173-74; Portalatin v. Graham, 624 F.3d at 79;
(continued...)

In Williams, the Supreme Court explained that "[u]nder the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams v. Taylor, 529 U.S. at 413, 120 S. Ct. at 1523.[11] However, "[t]he term 'unreasonable' is . . . difficult to define." Williams v. Taylor, 529 U.S. at 410, 120 S. Ct. at 1522. The Supreme Court made clear that "an unreasonable application of federal law is different from an incorrect application of federal law." Id.[12] Rather, the issue is "whether the state court's

---

[10]    (...continued)
Bierenbaum v. Graham, 607 F.3d 36, 47-48 (2d Cir. 2010), cert. denied, 131 S. Ct. 1693 (2011); Ortiz v. N.Y.S. Parole in Bronx, N.Y., 586 F.3d 149, 156 (2d Cir. 2009), cert. denied, 131 S. Ct. 320 (2010); Dunlap v. Burge, 583 F.3d at 164; Davis v. Grant, 532 F.3d at 140; Hawkins v. Costello, 460 F.3d 238, 242 (2d Cir. 2006), cert. denied, 549 U.S. 1215, 127 S. Ct. 1267 (2007); Henry v. Poole, 409 F.3d at 68; Howard v. Walker, 406 F.3d at 122; Rosa v. McCray, 396 F.3d 210, 219 (2d Cir.), cert. denied, 546 U.S. 889, 126 S. Ct. 215 (2005); Tueros v. Greiner, 343 F.3d at 591; Yung v. Walker, 341 F.3d at 109; DelValle v. Armstrong, 306 F.3d at 1200; Kennaugh v. Miller, 289 F.3d at 42; Loliscio v. Goord, 263 F.3d at 184; Lurie v. Wittner, 228 F.3d at 127-28.

[11]    Accord, e.g., Cullen v. Pinholster, 131 S. Ct. at 1399; Waddington v. Sarausad, 555 U.S. 179, 190, 129 S. Ct. 823, 831 (2009); Brown v. Payton, 544 U.S. at 141, 125 S. Ct. at 1439; Wiggins v. Smith, 539 U.S. at 520, 123 S. Ct. at 2534-35; Bierenbaum v. Graham, 607 F.3d at 48; Brisco v. Ercole, 565 F.3d 80, 87 (2d Cir.), cert. denied, 130 S. Ct. 739 (2009); Jones v. West, 555 F.3d 90, 96 (2d Cir. 2009); Davis v. Grant, 532 F.3d at 140; Lynn v. Bliden, 443 F.3d 238, 246 (2d Cir. 2006), cert. denied, 549 U.S. 1257, 127 S. Ct. 1383 (2007); Howard v. Walker, 406 F.3d at 122; Parsad v. Greiner, 337 F.3d at 181.

[12]    See also, e.g., Renico v. Lett, 130 S. Ct. 1855, 1862 (2010); Waddington v. Sarausad, 555 U.S. at 190, 129 S. Ct. at 831; Yarborough v. Alvarado, 541 U.S. at 664, 124 S. Ct. at 2150; Wiggins v. Smith, 539 U.S. at 520, 123 S. Ct. at 2535; Price v. Vincent, 538 U.S. at 641, 123 S. Ct. at 1853 ("As we have explained: '[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied [a Supreme Court case] incorrectly.'" (quoting Woodford v. Visciotti, 537 U.S. 19, 24-25, 123 S. Ct. 357, 360 (2002))); Lockyer v. Andrade, 538 U.S. at 75, 123 S. Ct. at 1175;
                                                                                              (continued...)

application of clearly established federal law was objectively unreasonable." Williams v. Taylor,

529 U.S. at 409, 120 S. Ct. at 1521.[13/]  "Objectively unreasonable" is different from "clear error."

Lockyer v. Andrade, 538 U.S. at 75, 123 S. Ct. at 1175 ("The gloss of clear error fails to give proper

deference to state courts by conflating error (even clear error) with unreasonableness.").  This is a

"'substantially higher threshold'" than incorrectness.  Renico v. Lett, 130 S. Ct. at 1862; accord, e.g.,

Knowles v. Mirzayance, 129 S. Ct. at 1420.[14/]  Federal habeas relief is precluded "so long as

---

[12/]     (...continued)
Dunlap v. Burge, 583 F.3d at 165-66 (A "federal court might agree with a petitioner that the
relevant federal law should have been interpreted differently than the way it was interpreted
by the state court yet still conclude that the state court's application of the federal law was
not unreasonable."); Brisco v. Ercole, 565 F.3d at 87-88; Jones v. West, 555 F.3d at 96;
Davis v. Grant, 532 F.3d at 140; Hawkins v. Costello, 460 F.3d at 243; Lynn v. Bliden, 443
F.3d at 246; Henry v. Poole, 409 F.3d at 68; Howard v. Walker, 406 F.3d at 122; Rosa v.
McCray, 396 F.3d at 219; Cox v. Donnelly, 387 F.3d at 197; Eze v. Senkowski, 321 F.3d at
124-25; DelValle v. Armstrong, 306 F.3d at 1200 ("With regard to issues of law, therefore,
if the state court's decision was not an unreasonable application of, or contrary to, clearly
established federal law as defined by Section 2254(d), we may not grant habeas relief even
if in our judgment its application was erroneous.").

[13/]     Accord, e.g., Yarborough v. Alvarado, 541 U.S. at 664, 124 S. Ct. at 2150; Wiggins v.
Smith, 539 U.S. at 520-21, 123 S. Ct. at 2535; Price v. Vincent, 538 U.S. at 641, 123 S. Ct.
at 1853; Lockyer v. Andrade, 538 U.S. at 75, 123 S. Ct. at 1174-75; Woodford v. Visciotti,
537 U.S. at 25-27, 123 S. Ct. at 360-61; Portalatin v. Graham, 624 F.3d at 79; Dunlap v.
Burge, 583 F.3d at 165; Davis v. Grant, 532 F.3d at 140; Mosby v. Senkowski, 470 F.3d 515,
519 (2d Cir. 2006), cert. denied, 552 U.S. 836, 128 S. Ct. 75 (2007); Hawkins v. Costello,
460 F.3d at 243; Lynn v. Bliden, 443 F.3d at 246; Henry v. Poole, 409 F.3d at 68; Howard
v. Walker, 406 F.3d at 122; Cox v. Donnelly, 387 F.3d at 197; Eze v. Senkowski, 321 F.3d
at 125; Ryan v. Miller, 303 F.3d 231, 245 (2d Cir. 2002); Loliscio v. Goord, 263 F.3d at 184;
Lurie v. Wittner, 228 F.3d at 128-29.

[14/]     However, the Second Circuit has explained "that while '[s]ome increment of incorrectness
beyond error is required . . . the increment need not be great; otherwise, habeas relief would
be limited to state court decisions so far off the mark as to suggest judicial incompetence.'"
Jones v. Stinson, 229 F.3d at 119 (quoting Francis S. v. Stone, 221 F.3d 100, 111 (2d Cir.
(continued...)

'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 131 S. Ct. 770, 786 (2011). "This is a 'difficult to meet' and 'highly deferential standard for evaluating state-court rulings.'" Cullen v. Pinholster, 131 S. Ct. at 1398 (citations omitted).

"[T]he range of reasonable judgment can depend in part on the nature of the relevant rule." Yarborough v. Alvarado, 541 U.S. at 664, 124 S. Ct. at 2149.[15/] "Even if the state court issued a decision 'contrary to' clearly established Supreme Court law, a petitioner 'cannot obtain relief . . . unless application of a *correct* interpretation of that [Supreme Court] decision leads to the

---

[14/]     (...continued)
2000)); accord, e.g., Brisco v. Ercole, 565 F.3d at 88; Jones v. West, 555 F.3d at 96; Brown v. Alexander, 543 F.3d 94, 100 (2d Cir. 2008) ("[W]e have observed that the 'unreasonable application' standard 'falls somewhere between merely erroneous and unreasonable to all reasonable jurists.'"); Davis v. Grant, 532 F.3d at 140; Lynn v. Bliden, 443 F.3d at 246; Henry v. Poole, 409 F.3d at 68; Howard v. Walker, 406 F.3d at 122; Rosa v. McCray, 396 F.3d at 219; Cox v. Donnelly, 387 F.3d at 197, 200-01; Yung v. Walker, 341 F.3d at 110; Eze v. Senkowski, 321 F.3d at 125; Ryan v. Miller, 303 F.3d at 245; Loliscio v. Goord, 263 F.3d at 184.

[15/]     The Supreme Court explained:

> [T]he range of reasonable judgment can depend in part on the nature of the relevant rule.  If a legal rule is specific, the range may be narrow.  Applications of the rule may be plainly correct or incorrect.  Other rules are more general, and their meaning must emerge in application over the course of time.  Applying a general standard to a specific case can demand a substantial element of judgment.  As a result, evaluating whether a rule application was unreasonable requires considering the rule's specificity.  The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations.

Yarborough v. Alvarado, 541 U.S. at 664, 124 S. Ct. at 2149; accord, e.g., Harrington v. Richter, 131 S. Ct. at 786; Renico v. Lett, 130 S. Ct. at 1864; Knowles v. Mirzayance, 129 S. Ct. at 1420 (Where the Supreme Court "standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard."); Portalatin v. Graham, 624 F.3d at 79; Ortiz v. N.Y.S. Parole in Bronx, N.Y., 586 F.3d at 157; Dunlap v. Burge, 583 F.3d at 166; Hawkins v. Costello, 460 F.3d at 243.

conclusion that his rights were violated.'" Cousin v. Bennett, 511 F.3d 334, 339 (2d Cir.), cert. denied, 553 U.S. 1096, 128 S. Ct. 2910 (2008) (citation omitted).

Moreover, the Second Circuit has held "that a state court determination is reviewable under AEDPA if the state decision unreasonably failed to extend a clearly established, Supreme Court defined, legal principle to situations which that principle should have, in reason, governed." Kennaugh v. Miller, 289 F.3d at 45.[16/]

Under the AEDPA, in short, the federal courts "must give the state court's adjudication a high degree of deference." Yung v. Walker, 341 F.3d at 109; accord, e.g., Cullen v. Pinholster, 131 S. Ct. at 1398; Felkner v. Jackson, 131 S. Ct. 1305, 1307 (2011) (per curiam) ("On federal habeas review, AEDPA 'imposes a highly deferential standard for evaluating state-court rulings' and 'demands that state-court decisions be given the benefit of the doubt.'" (citations omitted)); Renico v. Lett, 130 S. Ct. at 1862; Bell v. Cone, 543 U.S. at 455, 125 S. Ct. at 853; Mosby v. Senkowski, 470 F.3d at 519.  "[I]t is the petitioner's burden to demonstrate that the state court applied the relevant clearly established law to th[e] record in an unreasonable manner." Acosta v. Artuz, 575 F.3d 177, 184 (2d Cir. 2009); accord, e.g., Cullen v. Pinholster, 131 S. Ct. at

---

[16/]    Accord, e.g., Bierenbaum v. Graham, 607 F.3d at 47-48; Davis v. Grant, 532 F.3d at 140-41; Tueros v. Greiner, 343 F.3d at 591; Yung v. Walker, 341 F.3d at 109; see Yarborough v. Alvarado, 541 U.S. at 665-66, 124 S. Ct. at 2150-51 ("The petitioner contends that if a habeas court must extend a rationale before it can apply to the facts at hand then the rationale cannot be clearly established at the time of the state-court decision.  There is force to this argument.  Section 2254(d)(1) would be undermined if habeas courts introduced rules not clearly established under the guise of extensions to existing law.  At the same time, the difference between applying a rule and extending it is not always clear.  Certain principles are fundamental enough that when new factual permutations arise, the necessity to apply the earlier rule will be beyond doubt." (citations omitted)).

1398 ("The petitioner carries the burden of proof."); <u>Georgison</u> v. <u>Donelli</u>, 588 F.3d at 154.  As the

Supreme Court explained:

> If this standard is difficult to meet, that is because it was meant to be. . . .
> [§ 2254(d)] preserves authority to issue the writ in cases where there is no possibility
> fairminded jurists could disagree that the state court's decisions conflict with [the
> Supreme] Court's precedents.  It goes no further. . . . As a condition for obtaining
> habeas corpus from a federal court, a state prisoner must show that the state court's
> ruling on the claim being presented in federal court was so lacking in justification
> that there was an error well understood and comprehended in existing law beyond
> any possibility for fairminded disagreement.

<u>Harrington</u> v. <u>Richter</u>, 131 S. Ct. at 786-87.

Even where the state court decision does not specifically refer to either the federal

claim or to relevant federal case law, the deferential AEDPA review standard applies.

> Determining whether a state court's decision resulted from an unreasonable
> legal or factual conclusion does not require that there be an opinion from the state
> court explaining the state court's reasoning.  And as this Court has observed, a state
> court need not cite or even be aware of [Supreme Court] cases under § 2254(d).
> Where a state court's decision is unaccompanied by an explanation, the habeas
> petitioner's burden still must be met by showing there was no reasonable basis for
> the state court to deny relief.

<u>Harrington</u> v. <u>Richter</u>, 131 S. Ct. at 784 (citations to <u>Sellan</u> v. <u>Kuhlman</u>, 261 F.3d at 312, & other

cases omitted); <u>accord</u>, <u>e.g.</u>, <u>Cullen</u> v. <u>Pinholster</u>, 131 S. Ct. at 1402; <u>Bell</u> v. <u>Cone</u>, 543 U.S. at 455,

125 S. Ct. at 853; <u>Early</u> v. <u>Packer</u>, 537 U.S. 3, 8, 123 S. Ct. 362, 365 (2002) (State court not required

to cite Supreme Court cases, or even be aware of them, to be entitled to AEDPA deference, "so long

as neither the reasoning nor the result of the state-court decision contradicts them."); <u>Wilson</u> v.

<u>Mazzuca</u>, 570 F.3d 490, 499 (2d Cir. 2009) ("Where, as here, 'a state court fails to articulate the

rationale underlying its rejection of a petitioner's claim, and when that rejection is on the merits, the

federal court will focus its review on whether the state court's ultimate decision was an unreasonable application of clearly established Supreme Court precedent.'").[17]  "'[A] habeas court must determine what arguments or theories . . . could have supporte[d] the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court.'"  Cullen v. Pinholster, 131 S. Ct. at 1402.

"When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary."  Harrington v. Richter, 131 S. Ct. at 784-85.

"[R]eview under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits."  Cullen v. Pinholster, 131 S. Ct. at 1398.

Finally, in appropriate circumstances, "[i]f [the] court finds that the state court engaged in an unreasonable application of established law, resulting in constitutional error, it must next consider whether such error was harmless."  Howard v. Walker, 406 F.3d at 122.

---

[17]  See also, e.g., Wade v. Herbert, 391 F.3d 135, 140, 142 (2d Cir. 2004) (Appellate Division held claim was "'without merit.'"  "Such a summary determination, even absent citation of federal case law, is a determination 'on the merits' and as such requires the deference specified by § 2254."  Moreover, "[i]f any reasonable ground was available [for the state court's decision], we must assume the [state] court relied on it."); Francolino v. Kuhlman, 365 F.3d 137, 141 (2d Cir.) (Where "the Appellate Division concluded its opinion by stating that it had 'considered and rejected defendants' remaining claims,'" AEDPA deference applies.), cert. denied, 543 U.S. 872, 125 S. Ct. 110 (2004); Jenkins v. Artuz, 294 F.3d 284, 291 (2d Cir. 2002) ("In Sellan, we found that an even more concise Appellate Division disposition-the word 'denied'-triggered AEDPA deference.").

In addition to the standard of review of legal issues, the AEDPA provides a deferential review standard for state court factual determinations: "a determination of a factual issue made by a State court shall be presumed to be correct."  28 U.S.C. § 2254(e)(1); accord, e.g., Bierenbaum v. Graham, 607 F.3d at 48; Lynn v. Bliden, 443 F.3d at 246-47; Rosa v. McCray, 396 F.3d at 220.  "The petitioner bears the burden of 'rebutting the presumption of correctness by clear and convincing evidence.'"  Parsad v. Greiner, 337 F.3d at 181 (quoting § 2254(e)(1)); accord, e.g., Bierenbaum v. Graham, 607 F.3d at 48 ("A state court's determination of a factual issue is presumed to be correct, and may only be rebutted by clear and convincing evidence."); Brown v. Alexander, 543 F.3d at 100; Lynn v. Bliden, 443 F.3d at 246-47.

II.     **JUSTICE CARRUTHERS DID NOT VIOLATE THE DOCTRINE OF COLLATERAL ESTOPPEL OR STENSON'S DOUBLE JEOPARDY, DUE PROCESS OR FAIR TRIAL RIGHTS WHEN HE ADMITTED THE CREDIT CARD EVIDENCE**

      A.     **The Habeas Corpus Review Standard for Claims of Error in State Evidentiary Rulings**

"In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." Estelle v. McGuire, 502 U.S. 62, 68, 112 S. Ct. 475, 480 (1991) ("We have stated many times that 'federal habeas corpus relief does not lie for errors of state law.'").  Thus, a habeas petitioner must demonstrate that the allegedly-erroneous state court evidentiary rulings violated an identifiable constitutional right.  See, e.g., Rosario v. Kuhlman, 839 F.2d 918, 924 (2d Cir. 1988) ("The [habeas] court must determine whether the exclusion [of testimony] was an error of constitutional dimension . . . ."); Taylor v. Curry, 708 F.2d 886, 890-91 (2d Cir.) ("Erroneous [state court] evidentiary rulings do not

automatically rise to the level of constitutional error sufficient to warrant issuance of a writ of habeas corpus.  Rather, the writ would issue only where petitioner can show that the error deprived her of a fundamentally fair trial."), cert. denied, 464 U.S. 1000, 104 S. Ct. 503 (1983).

That is a "heavy burden, for 'generally, rulings by state trial courts on evidentiary issues, even if erroneous, do not rise to the level of a constitutional violation.'" Bonet v. McGinnis, 98 Civ. 6529, 2001 WL 849454 at *2 (S.D.N.Y. July 27, 2001).

The first step in this analysis is to determine whether the state court decision violated a state evidentiary rule, because the proper application of a presumptively constitutional state evidentiary rule could not be unconstitutional.[18] See, e.g., Brooks v. Artuz, 97 Civ. 3300, 2000 WL 1532918 at *6, *9 (S.D.N.Y. Oct. 17, 2000) (petitioner did not demonstrate an error under state evidentiary law, "much less" an error of constitutional magnitude); Jones v. Stinson, 94 F. Supp. 2d at 391-92 (once the habeas court has found that the state court ruling was not erroneous under state law, there is no need to apply a constitutional analysis).[19]

_____

[18]  This assumes that the petitioner has not attacked the constitutionality of the state evidentiary rule itself.  See, e.g., Hawkins v. Costello, 460 F.3d 238, 244 (2d Cir. 2006) (distinguishing between cases where the trial court deprived the petitioner of a fair trial by improperly applying the state evidentiary rule and cases addressing the constitutionality of the state evidentiary rule itself), cert. denied, 549 U.S. 1215, 127 S. Ct. 1267 (2007); Jones v. Stinson, 94 F. Supp. 2d 370, 387 n.19 (E.D.N.Y.) (distinguishing between cases "where an evidentiary rule was correctly applied as a matter of state law, but is either unconstitutional on its face or violates a constitutional right as applied," and cases where the petitioner took no exception to the constitutionality of the state evidentiary rule, but asserted that the state court decision misapplied the state rule, resulting in a constitutional violation), rev'd on other grounds, 229 F.3d 112 (2d Cir. 2000).

[19]  See also, e.g., Williams v. Walker, No. 00-CV-5912, 2001 WL 1352105 at *3 (E.D.N.Y. Oct. 31, 2001) (habeas court must first determine if ruling was erroneous under state law,
(continued...)

Second, the petitioner must allege that the state evidentiary error violated an identifiable constitutional right.  This necessarily eliminates consideration of purely state evidentiary errors not cognizable in the federal system.  See, e.g., Landy v. Costello, No. 97-2433, 141 F.3d 1151 (table), 1998 WL 105768 at *1 (2d Cir. Mar. 9, 1998) ("To the extent [petitioner's] claim is based on a Rosario violation, it must fail, because a habeas petition can only be granted to remedy some violation of federal law; the obligation to turn over Rosario material arises under state law.  Thus, the only question is whether the prosecution violated Brady."); Arocho v. Walker, 01 Civ. 1367, 2001 WL 856608 at *3 (S.D.N.Y. July 27, 2001); Ayala v. Hernandez, 712 F. Supp. 1069, 1074 (E.D.N.Y. 1989).

Third, an erroneous state evidentiary ruling that is asserted to be a constitutional violation will merit habeas relief only "'where [the] petitioner can show that the error deprived [him] of a fundamentally fair trial.'"  Rosario v. Kuhlman, 839 F.2d at 925.[20]  The test for "'fundamental

---

[19]   (...continued)
and then whether ruling was of a constitutional magnitude); Coleman v. Greiner, No. 97-CV-2409, 1999 WL 320812 at *5 (E.D.N.Y. May 19, 1999); Till v. Miller, 96 Civ. 4387, 1998 WL 397848 at *4 (S.D.N.Y. July 16, 1998); Mitchell v. Herbert, 97 Civ. 5128, 1998 WL 186766 at *5-6 (S.D.N.Y. Apr. 20, 1998) (Chin, D.J.); Copes v. Schriver, 97 Civ. 2284, 1997 WL 659096 at *3 (S.D.N.Y. Oct. 22, 1997); Simmons v. Ross, 965 F. Supp. 473, 480 (S.D.N.Y. 1997); Dey v. Scully, 952 F. Supp. 957, 969 (E.D.N.Y. 1997) ("[T]he Court engages in a two part analysis, examining 1) whether the exclusion [of evidence] was error under state law, and 2) whether the error amounted to the denial of the constitutional right to a fundamentally fair trial."); see generally Davis v. Strack, 270 F.3d 111, 123-24 (2d Cir. 2001) (in determining whether failure to give state jury charge violated federal constitution, first question for habeas court is whether the charge was required under New York law, and only if so, was the failure to give the charge of constitutional dimension).

[20]   See also, e.g., Jones v. Stinson, 229 F.3d at 120; Dunnigan v. Keane, 137 F.3d 117, 125 (2d Cir.) ("The introduction of improper evidence against a defendant does not amount to a
(continued...)

fairness'" is whether the excluded or improperly admitted evidence, "'evaluated in the context of the entire record,'"[21] "'create[d] a reasonable doubt [regarding petitioner's guilt] that did not otherwise exist.'"  Taylor v. Curry, 708 F.2d at 891 (quoting the materiality standard defined in United States v. Agurs, 427 U.S. at 112-13, 96 S. Ct. at 2401-02).[22]

   The "'fundamental fairness'" standard applies to the erroneous exclusion or admission of evidence.  See, e.g., Dowling v. United States, 493 U.S. 342, 352, 110 S. Ct. 668, 674 (1990) (The introduction of improper evidence does not violate due process unless the evidence "is so extremely unfair that its admission violates 'fundamental conceptions of justice.'");  McKinnon v. Superintendent, Great Meadow Corr. Facility,  422 F. App'x 69, 73 (2d Cir. 2011) ("[U]nless the challenged evidentiary rulings in the state proceedings affect the fundamental fairness of those

---

[20] (...continued)
violation of due process unless the evidence 'is so extremely unfair that its admission violates fundamental conceptions of justice.'"), cert. denied, 525 U.S. 840, 119 S. Ct. 101 (1998); Collins v. Scully, 755 F.2d 16, 18 (2d Cir. 1985) ("In order to prevail on a [habeas] claim that an evidentiary error deprived the defendant of due process under the Fourteenth Amendment he must show that the error was so pervasive as to have denied him a fundamentally fair trial . . . .").

[21] "If there is no reasonable doubt about guilt whether or not the additional evidence is considered, there is no justification for a new trial.  On the other hand, if the verdict is already of questionable validity, additional evidence of relatively minor importance might be sufficient to create a reasonable doubt." United States v. Agurs, 427 U.S. 97, 112-13, 96 S. Ct. 2392, 2402 (1976).

[22] Accord, e.g., Bell v. Ercole, 368 F. App'x 216, 218 (2d Cir. 2010); Rasmussen v. Filion, 164 F. App'x 56, 57 (2d Cir. 2006); Hawkins v. Costello, 460 F.3d at 244; Jones v. Stinson, 229 F.3d at 120; Justice v. Hoke, 90 F.3d 43, 47 (2d Cir. 1996); Johnson v. Ross, 955 F.2d 178, 181 (2d Cir. 1992); Blissett v. Lefevre, 924 F.2d 434, 439 (2d Cir.), cert. denied, 502 U.S. 852, 112 S. Ct. 158 (1991); Collins v. Scully, 755 F.2d at 19; Rosario v. Kuhlman, 839 F.2d at 925.

proceedings, the claims are not properly reviewable . . . ."); Young v. McGinnis, 319 F. App'x 12, 13 (2d Cir. 2009) ("Improperly admitted evidence can constitute a due process violation where it 'is so extremely unfair that its admission violates fundamental conceptions of justice.'"); Cordon v. Greiner, 225 F. App'x 13, 15 (2d Cir. 2007); Vega v. Portuondo, 120 F. App'x 380, 382 (2d Cir.) ("[T]he admission even of unfairly prejudicial evidence does not violate due process unless, taken in light of the record as a whole, it was sufficiently material to have removed a reasonable doubt that would otherwise have existed as to defendant's guilt."), cert. denied, 546 U.S. 836, 126 S. Ct. 66 (2005); Dunnigan v. Keane, 137 F.3d at 125 ("For the erroneous admission of . . . unfairly prejudicial evidence to amount to a denial of due process, the item must have been 'sufficiently material to provide the basis for conviction or to remove a reasonable doubt that would have existed on the record without it.'" (quoting Johnson v. Ross, 955 F.2d at 181)); Rodriguez v. O'Keefe, No. 96-2699, 122 F.3d 1057 (table), 1997 WL 557622 at *2 (2d Cir. Sept. 9, 1997), cert. denied, 522 U.S. 1123, 118 S. Ct. 1068 (1998); Collins v. Scully, 755 F.2d at 18-19; Roldan v. Artuz, 78 F. Supp. 2d 260, 276 (S.D.N.Y. 2000).[23/]

------

[23/]     For the reasons stated by Judge Block in Dey v. Scully, "[h]armless error analysis is simply inapplicable to [trial] error that only attains constitutional significance when considered in the context of the entire trial because such analysis inheres in the initial finding that the error was constitutionally significant.  A determination that such error was not harmless, after having already concluded that it denied the defendant a fundamentally fair trial, would be tautological." Dey v. Scully, 952 F. Supp. at 974; see also, e.g., Kyles v. Whitley, 514 U.S. 419, 436, 115 S. Ct. 1555, 1567 (1995) ("Agurs . . . opted for its formulation of materiality . . . only after expressly noting that this standard would recognize reversible constitutional error only when the harm to the defendant was greater than the harm sufficient for reversal under Kotteakos."); Washington v. Schriver, 255 F.3d 45, 56-57 (2d Cir. 2001) ("The creation of otherwise non-existent reasonable doubt [under Agurs] satisfies the
(continued...)

The final question is how to apply the AEDPA in the context of a fundamental fairness analysis, an issue addressed by the Second Circuit in Jones v. Stinson, 229 F.3d at 120-21. In Jones, the state appellate court decided that the trial court's evidentiary rulings had not denied the defendant a fair trial.  Id. at 116.  The Second Circuit held that, although it might have found, under the Agurs standard, that one of the trial court's rulings "'create[d] a reasonable doubt that did not otherwise exist,'" the Second Circuit could not conclude that the excluded testimony "would so certainly have created new ground for reasonable doubt that the appellate division's decision [affirming the trial court's ruling] was objectively unreasonable."  Id. at 120.  The Second Circuit thus denied habeas relief based on the AEDPA's deferential review standard.  Id. at 120-21.

### B.    The Admission of the Credit Card Evidence Did Not Violate Stenson's Right to a Fair Trial

Stenson claims that Justice Carruthers denied his right to a fair trial when he allowed the prosecutor to admit the credit card evidence after Justice Pickholz dismissed the indictment's credit card counts.  (Dkt. No. 1: Pet. ¶ 13(3).)

In affirming Stenson's conviction, the First Department ruled:

> The court properly admitted testimony that [Stenson] possessed credit cards that had been last seen in the premises where the burglary occurred, even though a motion court had dismissed the counts of the indictment relating to the cards.  This evidence clearly linked [Stenson] to the burglary and, contrary to [Stenson's] argument, we find nothing in People v. Resek, 3 N.Y.3d 385, 787 N.Y.S.2d 683 [2004] to suggest that otherwise admissible uncharged crimes evidence is necessarily rendered inadmissible by a dismissal of charges relating to the conduct at issue.

---

23/      (...continued)
'substantial and injurious' standard" under Brecht. (quoting Jones v. Stinson, 229 F.3d at 120)); Coleman v. Greiner, 1999 WL 320812 at *4-5.

> Here, the counts relating to the credit cards were dismissed, with leave to re-present, due to technical gaps in the proof before the grand jury. The dismissal cannot be viewed as "clearing" [Stenson] of possessing the credit cards (compare Resek, 3 N.Y.3d at 390) or creating any unfairness about using that possession as proper uncharged crimes evidence. [Stenson's] argument that the trial jury should have been told about the dismissal is unpreserved and we decline to review it in the interest of justice. As an alternative holding, we likewise reject it on the merits.

People v. Stenson, 68 A.D.3d 419, 419, 890 N.Y.S.2d 40, 40 (1st Dep't 2009), appeal denied, 14 N.Y.3d 893, 903 N.Y.S.2d 781 (2010).

Under New York law, evidence of uncharged crimes is generally inadmissible so that the jury does not convict the defendant based on a perceived predisposition towards criminal conduct that is deserving of punishment rather than for guilt of the charged offense. E.g., People v. Molineux, 168 N.Y. 264, 291 (1901); see, e.g., United States v. Gelzer, 50 F.3d 1133, 1139 (2d Cir. 1995); United States v. Concepcion, 983 F.2d 369, 392 (2d Cir. 1992), cert. denied, 510 U.S. 856, 114 S.Ct. 163 (1993).[24/]

"However, when the evidence of the other crimes is relevant to an issue other than the defendant's criminal tendency, it may be admitted on the basis of an exception to the general

---

[24/]    See also, e.g., People v. Alvino, 71 N.Y.2d 233, 241, 525 N.Y.S.2d 7, 11 (1987); People v. Beam, 57 N.Y.2d 241, 250, 455 N.Y.S.2d 575, 579-80 (1982); People v. Ventimiglia, 52 N.Y.2d 350, 359, 438 N.Y.S.2d 261, 264 (1981); People v. Allweiss, 48 N.Y.2d 40, 46-47, 421 N.Y.S.2d 341, 344 (1979); People v. Vails, 43 N.Y.2d 364, 368, 401 N.Y.S.2d 479, 481 (1977); People v. Condon, 26 N.Y.2d 139, 143, 309 N.Y.S.2d 152, 154 (1970); People v. Davis, 259 A.D.2d 706, 687 N.Y.S.2d 653, 654 (2d Dep't), appeal denied, 93 N.Y.2d 1016, 697 N.Y.S.2d 575 (1999); People v. Kanston, 192 A.D.2d 721, 721, 597 N.Y.S.2d 152, 153 (2d Dep't), appeal denied, 81 N.Y.2d 1074, 601 N.Y.S.2d 594 (1993); People v. Pons, 159 A.D.2d 471, 473, 552 N.Y.S.2d 344, 345 (2d Dep't), appeal denied, 76 N.Y.2d 741, 558 N.Y.S.2d 902 (1990); People v. Battles, 83 A.D.2d 164, 166, 443 N.Y.S.2d 932, 934 (4th Dep't 1981); People v. Le Grand, 76 A.D.2d 706, 708-09, 431 N.Y.S.2d 850, 852 (2d Dep't 1980).

rule, but only for the limited purpose for which it is relevant."  People v. Beam, 57 N.Y.2d at 250, 455 N.Y.S.2d at 579-80.[25/]

"Even then, such evidence is admissible only upon a trial court finding that its probative value for the jury outweighs the risk of undue prejudice to the defendant."  People v. Till, 87 N.Y.2d at 836-37, 637 N.Y.S.2d at 682; accord, e.g., People v. Alvino, 71 N.Y.2d at 241-42, 525 N.Y.S.2d at 11.

In People v. Molineux, the New York Court of Appeals "stated what has come to be known as the five Molineux exceptions to the rule forbidding introduction of evidence of similar crimes."  People v. Beam, 57 N.Y.2d at 250, 455 N.Y.S.2d at 580.  The New York Court of Appeals in Molineux held:

> Generally speaking, evidence of other crimes is competent to prove the specific crime charged when it tends to establish (1) motive; (2) intent; (3) the absence of mistake or accident; (4) a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of one tends to establish the others; (5) the identity of the person charged with the commission of the crime on trial.

People v. Molineux, 168 N.Y. at 293, 61 N.E. at 286.[26/]  This list of exceptions is "illustrative and not exhaustive," People v. Rojas, 97 N.Y.2d 32, 37, 735 N.Y.S.2d 470, 473 (2001), and evidence

---

[25/]      Accord, e.g., People v. Till, 87 N.Y.2d 835, 837, 637 N.Y.S.2d 681, 682 (1995); People v. Alvino, 71 N.Y.2d at 241-42, 525 N.Y.S.2d at 11; People v. Ventimiglia, 52 N.Y.2d at 359-60, 438 N.Y.S.2d at 264; People v. Allweiss, 48 N.Y.2d at 46-47, 421 N.Y.S.2d at 344; People v. Vails, 43 N.Y.2d at 368, 401 N.Y.S.2d at 482; People v. Condon, 26 N.Y.2d at 143, 309 N.Y.S.2d at 154; People v. Molineux, 168 N.Y. at 293.

[26/]      Accord, e.g., People v. Alvino, 71 N.Y.2d at 242, 525 N.Y.S.2d at 11; People v. Ventimiglia, 52 N.Y.2d at 359, 438 N.Y.S.2d at 264; People v. Allweiss, 48 N.Y.2d at 47, 421 N.Y.S.2d at 344; People v. Vails, 43 N.Y.2d at 368, 401 N.Y.S.2d at 482; People v. Condon, 26 N.Y.2d at 143, 309 N.Y.S.2d at 155.

that is necessary to provide "'background material'" or to "'complete the narrative of the episode'"

has also become a recognized exception.  People v. Till, 87 N.Y.2d at 837, 637 N.Y.S.2d at 682

(citing People v. Gines, 36 N.Y.2d 932, 932-33, 373 N.Y.S.2d 543, 543 (1975)).[27]

        In allowing the credit card evidence, Justice Carruthers stated that this evidence is

"admitted only for a limited purpose and that would be on the issue of whether or not [Stenson] is

properly identified as the perpetrator of the alleged burglary."  (See page 9 above.)

        As part of the prosecution's case, bar owner Gary Gillis testified that hours before the

burglary, there were four or five credit cards in the cash register that customers had left behind.  (See

page 7 above.)  Police Officer Menoni testified that Stenson had four credit cards in his jacket

pocket when he was arrested on a ledge near the bar.  (See pages 6-7 above.)  Gillis identified the

credit cards recovered from Stenson as the same cards that had been in the bar's cash register hours

earlier.  (See page 7 above.)  Consequently, because the evidence that Stenson possessed the credit

cards soon after the burglary provided circumstantial evidence identifying Stenson as the burglar,

the credit cards were properly admitted under Molineux's identity exception.  See, e.g., People v.

Fitzgerald, 84 A.D.3d 1397, 1398, 924 N.Y.S.2d 289, 290 (2d Dep't) (Evidence that defendant

---

[27]     See People v. Tosca, 98 N.Y.2d 660, 661, 746 N.Y.S.2d 276, 276 (2002) (background
        information about "how and why the police pursued and confronted defendant" admissible);
        People v. Then, 248 A.D.2d 159, 159, 670 N.Y.S.2d 182, 183 (1st Dep't) ("Evidence of the
        criminal conduct of a severed codefendant was properly admitted as highly probative of
        defendant's possession as well as being necessary to complete the narrative of events leading
        to defendant's arrest." (citations omitted)), appeal denied, 92 N.Y.2d 906, 680 N.Y.S.2d 71
        (1998); People v. Henry, 166 A.D.2d 720, 720, 561 N.Y.S.2d 297, 298 (2d Dep't 1990)
        ("[E]vidence of unconnected, uncharged criminal conduct . . . . is also admissible to
        complete the narrative of the crime charged, provided its probative value outweighs any
        possible prejudice."), appeal denied, 77 N.Y.2d 907, 569 N.Y.S.2d 939 (1991).

possessed victim's wallet when defendant was chased and apprehended by the police was admissible because, inter alia, it "was relevant to his identity as the perpetrator."), appeal denied, 17 N.Y.3d 816, 929 N.Y.S.2d 804 (2011); People v. Stephens, 63 A.D.3d 624, 625, 882 N.Y.S.2d 82, 84 (1st Dep't) ("[S]urveillance tapes depicting a man who matched defendant's description using the victim's credit card shortly after the crime. . . . provided strong circumstantial evidence of identity" that defendant stole the cards, and was not improper uncharged crime propensity evidence.), appeal denied, 13 N.Y.3d 800, 887 N.Y.S.2d 549 (2009); People v. Marmulstein, 6 A.D.3d 879, 881, 775 N.Y.S.2d 405, 408 (3d Dep't) ("[E]vidence of defendant's possession of the rings stolen in this burglary was relevant and admissible regarding his identity as the perpetrator of the burglary . . . ."), appeal denied, 3 N.Y.3d 660, 782 N.Y.S.2d 702 (2004).[28]

 Additionally, even if Justice Carruthers improperly admitted the credit card evidence (which he did not), this evidence did not deprive Stenson of a fundamentally fair trial.  When the credit cards were introduced into evidence, Justice Carruthers gave a thorough jury instruction that the credit card evidence could be used only for identification purposes:

---

[28] See also, e.g., People v. Edwards, 159 A.D.2d 583, 584, 552 N.Y.S.2d 656, 657 (2d Dep't) ("Since the identity of the gunman had not been conclusively established, proof that the defendant was in possession of the sawed-off shotgun and wearing similar clothes a few weeks after he had allegedly committed the robbery charged herein was relevant and thus admissible on the issue of the defendant's identity."), appeal denied, 76 N.Y.2d 787, 559 N.Y.S.2d 992 (1990); People v. Chamberlain, 96 A.D.2d 959, 960, 466 N.Y.S.2d 860, 862 (3d Dep't 1983) ("There is little question that the accused's identity presented a crucial issue in this case.  Since the prosecution established that .357 caliber bullets were used in the shooting, testimony that defendant possessed a .357 magnum weapon two weeks before the crime, and attempted to dispose of a handgun immediately thereafter, was relevant and properly admitted into evidence.").

> [T]here is no charge against [Stenson] in the indictment of the theft of credit cards. This evidence is admitted only for a limited purpose and that would be on the issue of whether or not [Stenson] is properly identified as the perpetrator of the alleged burglary and you could give these exhibits, if they are finally entered into evidence, any weight you see fit but only on that particular issue.

(See page 9 above.)  Additionally, as part of his final jury charge, Justice Carruthers instructed:

> Concerning the credit cards that Mr. Stenson allegedly had in his possession at the time of his arrest, as I told you previously, there are no charges in this Indictment relating to those credit cards.

> You may consider the evidence concerning the credit cards for the limited purpose that I previously mentioned.

> That is, whether or not the People have proven beyond a reasonable doubt that Mr. Stenson was the person who allegedly entered the building in question on December 24, 2006.

> Should you find that the evidence concerning the credit cards is credible, then you may give that evidence any weight you choose on the sole issue for which it was admitted.

> On the other hand, should you find that the evidence is not credible, then reject it as [not] having any value at all on this issue.

(See pages 11-12 above.)   Therefore, Stenson was not prejudiced because the jury is presumed to have followed Justice Carruthers' instructions.  See, e.g., CSX Transp., Inc. v. Hensley, 556 U.S. 838, 129 S. Ct. 2139, 2141 (2009) ("Jurors routinely serve as impartial factfinders in cases that involve sensitive, even life-and-death matters. In those cases, as in all cases, juries are presumed to follow the court's instructions."); United States v. Whitten, 610 F.3d 168, 191 (2d Cir. 2010) ("We presume that juries follow instructions . . . .").[29]

---

[29]      See also, e.g., Jackson v. Heath, 10 Civ. 3449, 2010 WL 3075557 at *18-19 (S.D.N.Y. (continued...)

Finally, even assuming Stenson was able to successfully argue that Justice Carruthers misapplied New York law in allowing evidence of uncharged crimes, he still would not be eligible for habeas relief because there is no Supreme Court precedent that such evidence gives rise to a constitutional violation.  See, e.g., Green v. Conway, No. 09-CV-6416,  2011 WL 5827317 at *8 (W.D.N.Y. Nov. 18, 2011) ("Given that the Supreme Court has not held that the use of uncharged crimes would violate the Due Process Clause, the Fourth Department's rejection of this claim cannot be said to have been contrary to, or an unreasonable application of, clearly established Supreme Court precedent."); Perez v. Lempke,  No. 10-CV-0303, 2011 WL 2746785 at *5 (W.D.N.Y. July 13, 2011); Cooley v. Superintendent, Auburn Corr. Facility, No. 09-CV-06384, 2011 WL 2651078 at *11 (W.D.N.Y. July 6, 2011) ("[T]he Court notes that the Supreme Court has yet to establish clearly when the admission of prior uncharged crimes under state evidentiary laws can constitute a federal due process violation.  It follows that the trial court judge's decision to admit the evidence at issue, and the Appellate Division's subsequent affirmance thereof, cannot be said to be 'contrary to' or an 'unreasonable application of' clearly-established federal law." (citation omitted)); Vargas v. Walsh, 10 Civ. 7604, 2011 WL 1900115 at *5 (S.D.N.Y. Apr. 14, 2011) ("As has been repeatedly

---

29/      (...continued)
Aug. 6, 2010) (Peck, M.J.) (Petitioner was not deprived of a fair trial where the trial judge instructed the jury to disregard the witness's testimony concerning petitioner's uncharged crimes; "The jury is presumed to obey the court's instructions." (& cases cited therein)); Kanani v. Phillips, 03 Civ. 2534, 2004 WL 2296128 at *19 (S.D.N.Y. Oct. 13, 2004) (Peck, M.J.) (Petitioner not deprived of a fair trial where "the trial judge gave a very specific limiting charge to the jury to ensure that jurors considered information about the uncharged crimes only for appropriate purposes, and not on [petitioner's] guilt or innocence of the crimes charged in the indictment." (& cases cited therein)), report & rec. adopted, 2005 WL 2431416 (S.D.N.Y. Oct. 3, 2005).

recognized in case law, 'the Supreme Court has never taken an unambiguous position on whether the admission of prior bad acts evidence in state court-even when introduced to show criminal propensity-violates due process.' . . . Courts have routinely held that federal habeas corpus relief is unavailable to challenge the admission of propensity or 'prior bad acts' evidence because there is no clearly established Supreme Court law barring the practice." (citation omitted)), report & rec. adopted, 2011 WL 1900148 (S.D.N.Y. May 18, 2011); Jackson v. Lee, 10 Civ. 3062, 2010 WL 4628013 at *34 (S.D.N.Y. Nov. 16, 2010) (Peck, M.J.) ("[T]here is no Supreme Court precedent that [uncharged crime] evidence gives rise to a constitutional violation."), report & rec. adopted, 2010 WL 5094415 (S.D.N.Y. Dec. 10, 2010); Mercedes v. McGuire, No. 08-CV-299, 2010 WL 1936227 at *8 (E.D.N.Y. May 12, 2010) (Appellate Division's rejection of petitioner's claim, that the use of uncharged crimes violated his due process rights, was neither contrary to, nor an unreasonable application of, clearly established Supreme Court precedent because "the Supreme Court has never held that a criminal defendant's due process rights are violated by the introduction of prior bad acts or uncharged crimes.").[30]

---

[30]  See also, e.g., Romero v. Rock, 08 Civ. 7791, 2010 WL 908844 at *13 (S.D.N.Y. Feb. 2, 2010) (Because "the Supreme Court has yet to establish clearly 'when the admission of prior crimes under state evidentiary laws can constitute a federal due process violation'" the trial court's "decision to admit [such] evidence subject to limiting instructions cannot be said to be 'contrary to' or an 'unreasonable application of' clearly-established federal law."), report & rec. adopted, 2011 WL 1467238 (S.D.N.Y. Apr. 18, 2011); Tingling v. Donelli, 07 Civ. 1833, 2008 WL 4724567 at *9 (S.D.N.Y. Oct. 24, 2008) ("Not only would Petitioner's claim fail if analyzed under the Second Circuit precedent cited above, but, under AEDPA, it would also fail . . . as the Supreme Court has not directly held that due process is violated by the introduction at trial of evidence of a defendant's uncharged crimes."); Jones v. Conway, 442 F. Supp. 2d 113, 131 (S.D.N.Y. 2006) ("Given that the Supreme Court has not held that the
(continued...)

C.   **The Admission of the Credit Card Evidence Did Not Violate the Doctrine of Collateral Estoppel or Stenson's Double Jeopardy Rights**

1.   **Collateral Estoppel**

Stenson claims that the credit card evidence was barred by collateral estoppel because Justice Pickholz dismissed the indictment's credit card counts.  (Dkt. No. 1: Pet. ¶ 13(1)-(3).) Specifically, Stenson argues that the prosecutor "should not have been permitted to re-litigate charges that the defendant was cleared of by way of a final order of dismissal in order to support the remaining charges at trial."  (Pet. ¶ 13(1).)

This claim is meritless.  "The doctrine of collateral estoppel prevents a plaintiff from relitigating in a subsequent proceeding an issue of fact or law that was fully and fairly litigated in a prior proceeding."  Purdy v. Zeldes, 337 F.3d 253, 258 (2d Cir. 2003).[31/]  Under New York law, collateral estoppel applies only where, inter alia, "there has been a final determination on the merits of the issue sought to be precluded."  Davis v. Halpern, 813 F.2d 37, 39 (2d Cir. 1987).[32/]

---

[30/]   (...continued)
use of uncharged crimes would violate the Due Process Clause, the Appellate Division's rejection of this claim is hardly either contrary to or an unreasonable application of clearly established Supreme Court law.").

[31/]   Accord, e.g., Nachum v. Ezagui, 83 A.D.3d 1017, 1018, 922 N.Y.S.2d 459, 460-61 (2d Dep't 2011) ("'Under the doctrine of collateral estoppel, a party is precluded from relitigating an issue which has been previously decided against him in a prior proceeding where he [or she] had a full and fair opportunity to litigate such issue.'"); Lockitt v. Booker, 80 A.D.3d 700, 700, 914 N.Y.S.2d 909, 910 (2d Dep't 2011); Hughes v. Farrey, 30 A.D.3d 244, 246-47, 817 N.Y.S.2d 25, 28 (1st Dep't 2006) ("The doctrine of collateral estoppel precludes a party from relitigating an issue already decided against the party where the party had a fair opportunity to litigate."), appeal denied, 8 N.Y.3d 841, 830 N.Y.S.2d 693 (2007).

[32/]   Accord, e.g., McBride v. Bratton, No. 96-9602, 122 F.3d 1056 (table), 1997 WL 383521 at (continued...)

Here, the grand jury found charged Stenson with fourth degree grand larceny and fourth degree criminal possession of stolen property for the credit cards.  (Dkt. No. 8: Steward Aff. Ex. G: Stenson 8/10/10 Aff. Ex. A: Stenson Indictment.)   In dismissing these counts, Justice Pickholz ruled that the grand jury evidence was insufficient because there was no testimony "that the credit cards usually kept in the cash register were missing after the burglary."  (See page 3 above.)   Notably, Justice Pickholz did not rule that Stenson did not steal the credit cards. Consequently, collateral estoppel does not apply because Justice Pickholz's ruling was not a "'final determination that the acts alleged did not occur.'"  See, e.g., People v. Terry, 38 A.D.3d 297, 297, 830 N.Y.S.2d 659, 659 (1st Dep't) ("'A Grand Jury's decision not to return an indictment on the ground of insufficient legal evidence does not contain the finality requisite to the application of the doctrine of collateral estoppel . . . .   Since a Grand Jury decision not to indict is not a final determination that the acts alleged did not occur, dismissal of the criminal charge by the Grand Jury cannot be dispositive of the outcome of [another] proceeding.'"), appeal denied, 9 N.Y.3d 927, 844 N.Y.S.2d 182 (2007).[33/]

---

[32/]      (...continued)
*2 (2d Cir. July 09, 1997); Harvey v. Sawyer, No. 09-CV-598, 2010 WL 3323665 at *4 (N.D.N.Y. July 22, 2010), report & rec. adopted, 2010 WL 3323669 (N.D.N.Y. Aug. 20, 2010); Fletcher v. Goord, No. 07-cv-707, 2008 WL 4426763 at *9 (N.D.N.Y. Sept. 25, 2008).

[33/]      See also, e.g., People v. West, 283 A.D.2d 721, 722, 725 N.Y.S.2d 704, 706 (3d Dep't), appeal denied, 96 N.Y.2d 836, 729 N.Y.S.2d 457 (2001); People v. Estes, 202 A.D.2d 516, 517, 609 N.Y.S.2d 62, 63-64 (2d Dep't), appeal denied, 84 N.Y.2d 825, 617 N.Y.S.2d 145 (1994); People ex rel. Pickett v. Ruffo, 96 A.D.2d 128, 130, 469 N.Y.S.2d 496, 498 (3d Dep't 1983).

Moreover, Justice Pickholz granted "leave to represent these counts to a new Grand Jury."  (See page 3 above.)  Thus, because the prosecutor could have presented the charges to another grand jury, Justice Pickholz's dismissal was not a final determination for collateral estoppel purposes.  See, e.g., McGrath v. Gold, 36 N.Y.2d 406, 410, 412, 369 N.Y.S.2d 62, 66 (1975) (Court's dismissal of an indictment for lack of evidence was not a final determination for collateral estoppel purposes because, inter alia, "the dismissal would not bar a trial based on a subsequent accusatory instrument charging the identical offenses.").

### 2.    **Double Jeopardy**

Stenson further claims that Justice Carruthers violated Stenson's double jeopardy rights by admitting the credit card evidence after Justice Pickholz dismissed the indictment's credit card counts  (Dkt. No. 1: Pet. ¶ 13(2).)

The Double Jeopardy Clause of the Fifth Amendment provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb."  U.S. Const. amend. V. This prohibition applies to state prosecutions through the Fourteenth Amendment.  Benton v. Maryland, 395 U.S. 784, 794, 89 S. Ct. 2056, 2062 (1969).[34/]  The Double Jeopardy Clause "protects against a second prosecution for the same offense after acquittal.  It protects against a second prosecution for the same offense after conviction.  And it protects against multiple punishments for

---

[34/]    Accord, e.g., Monge v. California, 524 U.S. 721, 727, 118 S. Ct. 2246, 2250 (1998); North Carolina v. Pearce, 395 U.S. 711, 717, 89 S. Ct. 2072, 2076 (1969), overruled on other grounds, Alabama v. Smith, 490 U.S. 794, 109 S. Ct. 2201 (1989); Skinner v. Duncan, 01 Civ. 6656, 2003 WL 21386032 at *28 & n.42 (S.D.N.Y. June 17, 2003) (Peck, M.J.) (& cases cited therein).

the same offense." <u>North Carolina</u> v. <u>Pearce</u>, 395 U.S. at 717, 89 S. Ct. at 2076 (fns. omitted).[35/]

None of these three circumstances are present in this case because Stenson was never tried for the

credit card charges.   Accordingly, Justice Carruthers did not violate Stenson's double jeopardy

rights.

### III.   STENSON'S TRIAL COUNSEL WAS NOT INEFFECTIVE

Stenson argues that his trial counsel was ineffective for failing to object to the credit

card evidence "on double jeopardy and due process grounds."  (Dkt. No. 1: Pet. ¶ 13(4).)  Stenson's

trial counsel repeatedly objected to the credit card evidence on uncharged crimes grounds, but her

objections were overruled.  (<u>See</u> pages 7-10 above.)  Because Stenson's collateral estoppel and

double jeopardy arguments are meritless (<u>see</u> Point II.B-C above), trial counsel was not ineffective

for failing to raise these meritless claims.  <u>See</u>, <u>e.g.</u>, <u>United States</u> v. <u>Noble</u>, 363 F. App'x 771, 773

(2d Cir. 2010) ("An attorney's '[f]ailure to make a meritless argument does not amount to ineffective

assistance.'"); <u>United States</u> v. <u>Regalado</u>, 518 F.3d 143, 149 n.3 (2d Cir. 2008); <u>Smith</u> v. <u>Hulihan</u>,

11 Civ. 2948, 2011 WL 4058764 at *16 (S.D.N.Y. Sept. 13, 2011) (Peck, M.J.); <u>Calderon</u> v. <u>Perez</u>,

10 Civ. 2562, 2011 WL 293709 at *38 (S.D.N.Y. Jan. 28, 2011) (Peck, M.J.) ("To the extent that

both state courts found that the hearing evidence established probable cause, defense counsel cannot

---

[35/]        <u>Accord</u>, <u>e.g.</u>, <u>Monge</u> v. <u>California</u>, 524 U.S. at 727-28, 118 S. Ct. at 2250; <u>Ohio</u> v. <u>Johnson</u>,
467 U.S. 493, 498, 104 S. Ct. 2536, 2540 (1984); <u>Brown</u> v. <u>Ohio</u>, 432 U.S. 161, 165, 97 S.
Ct. 2221, 2225 (1977); <u>United States</u> v. <u>Basciano</u>, 599 F.3d 184, 196 (2d Cir. 2010); <u>United</u>
<u>States</u> v. <u>McCourty</u>, 562 F.3d 458, 472 (2d Cir.), <u>cert. denied</u>, 130 S. Ct. 1012 (2009); <u>United</u>
<u>States</u> v. <u>Dionisio</u>, 503 F.3d 78, 79 (2d Cir. 2007), <u>cert. denied</u>, 555 U.S. 825, 129 S. Ct. 158
(2008); <u>Boyd</u> v. <u>Meachum</u>, 77 F.3d 60, 63 (2d Cir.), <u>cert. denied</u>, 519 U.S. 838, 117 S. Ct.
114 (1996); <u>United States</u> v. <u>LoRusso</u>, 695 F.2d 45, 53 (2d Cir. 1982), <u>cert. denied</u>, 460 U.S.
1070, 103 S. Ct. 1525 (1983); <u>Skinner</u> v. <u>Duncan</u>, 2003 WL 21386032 at *28.

be ineffective for failing to put forth the meritless argument that there was no basis to stop" petitioner.), report & rec. adopted, 2011 WL 1405029 (S.D.N.Y. Apr. 5, 2011); Fabre v. Taylor, 08 Civ. 5883, 2009 WL 162881 at *11 (S.D.N.Y. Jan. 20, 2009) (Peck, M.J.) ("[C]ounsel cannot be found ineffective for 'not pursuing a strategy doomed to failure.'"), report & rec. adopted, 2009 WL 1457169 (S.D.N.Y. May 26, 2009).[36/]

## CONCLUSION

For the reasons set forth above, Stenson's habeas petition should be DENIED in its entirety and a certificate of appealability should not be issued.

## FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have fourteen (14) days from service of this Report to file written objections. See also Fed. R. Civ. P. 6.[37/]  Such objections (and any responses to objections) shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Richard J. Sullivan, 500 Pearl Street, Room 640, and to my chambers, 500 Pearl Street, Room 1370.  Any requests for an extension of time for filing objections must be directed to Judge Sullivan (with a courtesy copy to my chambers).  Failure to file objections will result in a waiver of those objections

---

[36/]   See also, e.g., Frieson v. Martuscello, 11 Civ. 0168, 2011 WL 2693564 at *22 n.30 (S.D.N.Y. July 23, 2011) (Peck, M.J.); Devison v. Cunningham, 09 Civ. 1031, 2010 WL 5060789 at *23 (S.D.N.Y. Oct. 15, 2010), report & rec. adopted, 2010 WL 5060728 (S.D.N.Y. Dec. 8, 2010); Nickens v. Moscicki, 09 Civ. 3097, 2010 WL 2899863 at *8 (S.D.N.Y. July 21, 2010).

[37/]   If the pro se petitioner requires copies of any of the cases reported only in Westlaw, petitioner should request copies from opposing counsel.  See Lebron v. Sanders, 557 F.3d 76, 79 (2d Cir. 2009); SDNY-EDNY Local Civil Rule 7.2.

for purposes of appeal. Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985); IUE AFL-CIO Pension Fund v. Herrmann, 9 F.3d 1049, 1054 (2d Cir. 1993), cert. denied, 513 U.S. 822, 115 S. Ct. 86 (1994); Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993); Frank v. Johnson, 968 F.2d 298, 300 (2d Cir.), cert. denied, 506 U.S. 1038, 113 S. Ct. 825 (1992); Small v. Sec'y of Health & Human Servs., 892 F.2d 15, 16 (2d Cir. 1989); Wesolek v. Canadair Ltd., 838 F.2d 55, 57-59 (2d Cir. 1988); McCarthy v. Manson, 714 F.2d 234, 237-38 (2d Cir. 1983).

Dated:  New York, New York
        January 10, 2012

                    Respectfully submitted,

                    **Andrew J. Peck**
                    United States Magistrate Judge

Copies to:  Charles Stenson
            Priscilla Steward, Esq.
            Judge Richard J. Sullivan